UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Davenell L. Ash and Unique Beauty & Hair Supply, L.L.C., | Case No. 17-cv-1461 (WMW/LIB) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF DULUTH'S MOTION TO DISMISS** |
| City of Duluth and Officers 1-10, in their individual capacities for actions under color of law as police officers of the City of Duluth, | |
| Defendants. | |

---

Plaintiffs allege multiple instances in which their civil rights were violated by Defendants City of Duluth (the City) and Officers 1-10. The City moves to dismiss Plaintiffs' claims against it, (Dkt. 70), arguing that Plaintiffs' second amended complaint fails to state a claim against the City for discriminatory denial of public services, discriminatory denial of the full and equal benefits of the law, and common law conversion. *See* Fed. R. Civ. P. 12(b)(6). For the reasons addressed below, the City's motion is denied as to Plaintiffs' common law conversion claim and granted in all other respects.

## BACKGROUND

Plaintiff Davenell L. Ash owns and operates Plaintiff Unique Beauty & Hair Supply, L.L.C. (Unique Beauty), a salon and beauty supply retail outlet in Duluth, Minnesota. Ash is African American, and Unique Beauty caters to the beauty and cosmetic needs of African-American and other non-Caucasian individuals. Ash and Unique Beauty allege

that the City and its employees have subjected them to multiple acts of discrimination because of Ash's race. In support of these claims, the second amended complaint identifies six incidents or ongoing courses of conduct that occurred between April 2012 and September 2017. These allegations are summarized below.

First, Plaintiffs allege that Ash called the Duluth police in April 2012 to report a male shoplifter who had sexually assaulted Ash's daughter inside Unique Beauty. Two Duluth police officers responded to Ash's call. But instead of apprehending the shoplifter, Plaintiffs allege, the police officers assaulted Ash's daughter and charged both Ash and her daughter with disorderly conduct.

Second, Plaintiffs allege that Ash contacted a Duluth police officer a short time after the shoplifting incident and asked what she could do to improve safety conditions at Unique Beauty. In response, the officer advised Ash to remove the street-facing signs at the front of the store that feature African-American and other non-Caucasian models. To the best of Ash's knowledge, no Duluth police officer has ever given similar advice to the proprietors of salons or beauty supply stores that primarily cater to Caucasian customers.

Third, Plaintiffs allege that Ash called the Duluth police sometime in 2014 to report a fight outside her store among individuals who were not associated with her business. As a result, a Duluth police officer threatened to designate Unique Beauty as a "nuisance business."

Fourth, Plaintiffs allege that Ash has reported trespassers to the Duluth police on multiple occasions since October 2013, but none of these individuals has been arrested or

prosecuted. Ash believes that the City routinely prosecutes trespassers on the premises of Caucasian-owned businesses in Duluth.

Fifth, Plaintiffs allege that on multiple occasions since 2014, Duluth parking enforcement officers have engaged in discriminatory conduct by selectively enforcing parking laws. On one occasion, Ash observed a Caucasian woman parking in front of Unique Beauty without paying the meter. When Ash complained to a Duluth parking attendant, the parking attendant responded by threatening Ash with mace. In contrast, the City's parking enforcement office issued approximately 25 parking tickets to Ash between 2009 and April 2017 for parking her vehicle near Unique Beauty. Ash also observed a Duluth parking enforcement officer prevent a disabled customer from entering Unique Beauty. And in April 2017, Ash observed two of the City's employees tow Ash's vehicle from a parking spot near Unique Beauty without any legal basis.

Sixth, Plaintiffs allege that multiple Duluth fire trucks and emergency vehicles arrived at Unique Beauty in September 2017 for no apparent reason. This event upset Ash and her customers.

Based on the foregoing conduct, Ash and Unique Beauty assert four claims against the City: (1) discriminatory denial of public services because of race, in violation of Title VI of the Civil Rights Act of 1964; (2) discriminatory denial of the full and equal benefits of the law, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983; (3) discriminatory denial of the full and equal benefits of the law, in violation of 42 U.S.C. § 1981; and (4) conversion of Ash's

vehicle, in violation of Minnesota common law.[1] The City moves to dismiss the claims against it for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

**ANALYSIS**

A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. And legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 679. The Court addresses in turn each of the four claims Plaintiffs assert against the City.

**I.    Plaintiffs' Title VI Claim**

---

[1]    Ash also asserts a claim for violations of her Fourth Amendment right to be free from unreasonable seizures, but that claim is not asserted against the City and, therefore, is not implicated by the City's motion to dismiss.

4

The second amended complaint does not identify a specific provision of Title VI that the City allegedly violated. The City construes this claim as arising under 42 U.S.C. § 2000d, which Plaintiffs confirm in their memorandum of law in opposition to the City's motion to dismiss. As such, the Court adopts this construction of Plaintiffs' Title VI claim.

The City contends that Plaintiffs have failed to state a claim under Title VI, 42 U.S.C. § 2000d. Title VI provides, as relevant here, that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI prohibits intentional discrimination, not discrimination arising from disparate impact. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *accord Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 794 (8th Cir. 2010). Private individuals may sue to enforce this aspect of Title VI and obtain both damages and injunctive relief. *Sandoval*, 532 U.S. at 279.

To prevail on a Title VI claim, a plaintiff must be an "intended beneficiary" of a federally funded "program or activity." *Carmi v. Metro. St. Louis Sewer Dist.*, 620 F.2d 672, 674 (8th Cir. 1980) ("Congress did not intend to extend protection under [T]itle VI to any person other than an intended beneficiary of federal financial assistance."), *abrogated on other grounds by Consol. Rail Corp. v. Darrone*, 465 U.S. 624 (1984); *accord Unity Healthcare, Inc. v. Cty. of Hennepin*, No. 14-CV-114, 2014 WL 6775293, at *8 (D. Minn. Dec. 2, 2014) (dismissing Title VI claim because plaintiffs did not sufficiently plead that they were intended beneficiaries of the federally funded program). This requires a nexus between the alleged discrimination and a specific program or activity that receives federal

funding. *Cf. Consol. Rail Corp.*, 465 U.S. at 636 (discussing analogous language in Rehabilitation Act, observing that "[c]learly, this language limits the ban on discrimination to the specific program that receives federal funds"); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 536-38 (1982) (discussing same in context of Title IX); *Jackson v. Conway*, 476 F. Supp. 896, 900 (E.D. Mo. 1979) (observing that when a municipal program receives federal funding, Title VI requires "that the *service or program involved* be provided in a non-discriminatory manner" (emphasis added)), *aff'd per curiam*, 620 F.2d 680 (8th Cir. 1980).

Plaintiffs allege that the City receives federal funds in two forms. First, the City receives funds from the Department of Housing and Urban Development (HUD) to "provide decent housing, a suitable living environment, and opportunities to expand economic opportunities" for low- and moderate-income individuals. Second, the City receives funds under the "Workforce Investment Act . . . to operate employment and training programs." The alleged discriminatory conduct, however, is limited to the actions (or inaction) of the City's police department, parking enforcement office, and fire department. Plaintiffs have not alleged either that they are the intended beneficiaries of HUD funds or Workforce Investment Act funds or that a nexus exists between the alleged discrimination and the specific "program or activity" that receives those federal funds.

Plaintiffs rely on *Alasady v. Northwest Airlines Corp.*, in which the district court denied a motion to dismiss a Title VI claim, concluding that "Plaintiffs need not plead or prove that they were 'intended beneficiaries' of any federal financial aid [Defendant] received." No. Civ.02-3669, 2003 WL 1565944, at *13 (D. Minn. Mar. 3, 2003). But

funding. *Cf. Consol. Rail Corp.*, 465 U.S. at 636 (discussing analogous language in Rehabilitation Act, observing that "[c]learly, this language limits the ban on discrimination to the specific program that receives federal funds"); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 536-38 (1982) (discussing same in context of Title IX); *Jackson v. Conway*, 476 F. Supp. 896, 900 (E.D. Mo. 1979) (observing that when a municipal program receives federal funding, Title VI requires "that the *service or program involved* be provided in a non-discriminatory manner" (emphasis added)), *aff'd per curiam*, 620 F.2d 680 (8th Cir. 1980).

Plaintiffs allege that the City receives federal funds in two forms. First, the City receives funds from the Department of Housing and Urban Development (HUD) to "provide decent housing, a suitable living environment, and opportunities to expand economic opportunities" for low- and moderate-income individuals. Second, the City receives funds under the "Workforce Investment Act . . . to operate employment and training programs." The alleged discriminatory conduct, however, is limited to the actions (or inaction) of the City's police department, parking enforcement office, and fire department. Plaintiffs have not alleged either that they are the intended beneficiaries of HUD funds or Workforce Investment Act funds or that a nexus exists between the alleged discrimination and the specific "program or activity" that receives those federal funds.

Plaintiffs rely on *Alasady v. Northwest Airlines Corp.*, in which the district court denied a motion to dismiss a Title VI claim, concluding that "Plaintiffs need not plead or prove that they were 'intended beneficiaries' of any federal financial aid [Defendant] received." No. Civ.02-3669, 2003 WL 1565944, at *13 (D. Minn. Mar. 3, 2003). But

funding. *Cf. Consol. Rail Corp.*, 465 U.S. at 636 (discussing analogous language in Rehabilitation Act, observing that "[c]learly, this language limits the ban on discrimination to the specific program that receives federal funds"); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 536-38 (1982) (discussing same in context of Title IX); *Jackson v. Conway*, 476 F. Supp. 896, 900 (E.D. Mo. 1979) (observing that when a municipal program receives federal funding, Title VI requires "that the *service or program involved* be provided in a non-discriminatory manner" (emphasis added)), *aff'd per curiam*, 620 F.2d 680 (8th Cir. 1980).

Plaintiffs allege that the City receives federal funds in two forms. First, the City receives funds from the Department of Housing and Urban Development (HUD) to "provide decent housing, a suitable living environment, and opportunities to expand economic opportunities" for low- and moderate-income individuals. Second, the City receives funds under the "Workforce Investment Act . . . to operate employment and training programs." The alleged discriminatory conduct, however, is limited to the actions (or inaction) of the City's police department, parking enforcement office, and fire department. Plaintiffs have not alleged either that they are the intended beneficiaries of HUD funds or Workforce Investment Act funds or that a nexus exists between the alleged discrimination and the specific "program or activity" that receives those federal funds.

Plaintiffs rely on *Alasady v. Northwest Airlines Corp.*, in which the district court denied a motion to dismiss a Title VI claim, concluding that "Plaintiffs need not plead or prove that they were 'intended beneficiaries' of any federal financial aid [Defendant] received." No. Civ.02-3669, 2003 WL 1565944, at *13 (D. Minn. Mar. 3, 2003). But

*Alasady* relies on cases outside of the Eighth Circuit and does not address the Eighth Circuit's contrary statement of law in *Carmi*. *See id.* Moreover, *Alasady* is otherwise distinguishable. The defendant in *Alasady* was a private company, which is a specific "program or activity" under Title VI. *See* 42 U.S.C. § 2000d-4(a)(3) (defining "program or activity" in Title VI to include "all the operations of . . . an entire corporation, partnership, or other private organization" that receives federal financial assistance). As such, the alleged discrimination in *Alasady* had a clear nexus with the specific "program or activity" that received federal funds. But here, the City is not a specific "program or activity;" and Plaintiffs have not alleged discriminatory conduct that has a nexus to a specific "program or activity" that receives federal funding. For these reasons, *Alasady* is inapposite.

Accordingly, the City's motion to dismiss Plaintiffs' Title VI claim against the City is granted.

## II. Plaintiffs' Section 1983 Claim

The City argues that Plaintiffs fail to state a Section 1983 claim because Plaintiffs' second amended complaint does not plead facts demonstrating that a municipal policy or custom authorized the alleged discriminatory conduct. In response, Plaintiffs contend that they should be permitted to conduct discovery "to prove, or to disprove, whether the discrete events pleaded manifest the enactment of racially discriminatory customs and usages."

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. A Section 1983 claim against a municipality cannot be based on vicarious liability. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). But a municipality may be subject to Section 1983 liability if either the inadequate training of its employees, a municipal policy, or an unofficial municipal custom causes a constitutional injury. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (training); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (policy or custom); *see also Bd. of Cty. Comm'rs*, 520 U.S. at 403-04.

As Plaintiffs have not alleged that their constitutional injury was caused by either inadequate training or an official policy, Plaintiffs' Section 1983 claim against the City necessarily is based on an alleged municipal custom. *See Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016). To state a claim for Section 1983 liability based on a municipal custom, a plaintiff must plead facts that establish (1) "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by the municipality's employees; (2) "deliberate indifference to or tacit authorization" of the misconduct by the municipality's policymaking officials after those officials have received notice of the misconduct; and (3) that the plaintiff was injured by acts pursuant to the municipality's custom, such that "the custom was a moving force behind the constitutional violation." *Id.* Even if a plaintiff is not privy to the facts necessary to describe with specificity the alleged municipal custom, the complaint must allege facts that would

8

support the existence of a municipal custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

Because it is dispositive of the issue presented here, the Court begins with the second element, which requires a plaintiff to "allege facts showing that policymaking officials had notice of or authorized" the misconduct. *Kelly v. City of Omaha*, 813 F.3d 1070, 1076 (8th Cir. 2016) (affirming dismissal of Section 1983 claim against municipality that failed to allege such facts). Merely referencing previous complaints made against a city employee, without more, is insufficient to state a claim for Section 1983 liability based on a municipal custom. *See id.*; *cf. Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (explaining that plaintiff would need to show that the local government "had failed to investigate previous incidents before a court could conclude" that law enforcement officers "believed a municipal custom allowed them to violate [plaintiff's] rights with impunity"); *Hassuneh v. City of Minneapolis*, 560 F. Supp. 2d 764, 771 (D. Minn. 2008) (granting municipality's motion for summary judgment when plaintiffs did not "provide any evidence that the City of Minneapolis was on notice of the alleged constitutional violation and that the City was deliberately indifferent or authorized the alleged constitutional violation").

Plaintiffs do not allege any facts that, if proven, would establish that they provided notice of any alleged constitutional violations to a policymaking official. Nor do Plaintiffs allege that a policymaking official authorized or was deliberately indifferent to the alleged constitutional violations of the City's employees. And there are no alleged facts from which such an inference could reasonably be drawn.

Plaintiffs contend that the City's motion is premature and that Plaintiffs should be permitted to conduct discovery to determine the identities of Defendant Officers 1-10. When opposing a motion to dismiss for failure to state a claim, a plaintiff may rely on a "reasonable expectation that discovery will reveal evidence" supporting the allegations in the complaint. *Twombly*, 550 U.S. at 556. But Plaintiffs provide no legal authority for delaying consideration of one defendant's motion to dismiss to permit Plaintiffs to conduct discovery as to the identities of other defendants. Indeed, the identities of Defendant Officers 1-10 are immaterial to whether Plaintiffs have stated a Section 1983 claim against the City.

Because Plaintiffs have not alleged any facts to support this necessary element of a claim for Section 1983 liability based on a municipal custom, Plaintiffs have failed to state a Section 1983 claim.[2] Accordingly, the City's motion to dismiss Plaintiffs' Section 1983 claim against the City is granted.

### III. Plaintiffs' Section 1981 Claim

The City next argues that Plaintiffs' Section 1981 claim must be dismissed because it suffers from the same deficiencies as Plaintiffs' Section 1983 claim. Plaintiffs do not respond to this argument.

---

[2] In light of the foregoing conclusion, the Court need not address whether Plaintiffs have adequately alleged a continuing, widespread, persistent pattern of unconstitutional misconduct or that the City's municipal custom caused Plaintiffs' injuries. The Court also declines to address the City's alternative argument that Plaintiffs' Section 1983 claim must be dismissed because Plaintiffs fail to state a plausible underlying Equal Protection claim.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). "A federal action to enforce rights under [Section] 1981 against a state actor may only be brought pursuant to [Section] 1983." *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998). A municipality is a state actor. *Wickersham v. City of Columbia*, 481 F.3d 591, 598 n.4 (8th Cir. 2007). Because Plaintiffs have failed to state a Section 1983 claim, they necessarily also have failed to state a Section 1981 claim.

Accordingly, the City's motion to dismiss Plaintiffs' Section 1981 claim against the City is granted.

### IV. Plaintiff Ash's Common Law Conversion Claim

The City next argues that Plaintiff Ash's common law conversion claim must be dismissed. Because the second amended complaint fails to allege that the City willfully interfered with Ash's property, the City contends, Ash fails to state a claim for common law conversion.

Minnesota law defines conversion as "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.' " *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (quoting *Larson v. Archer-Daniels-Midland Co.*, 32 N.W.2d 649, 650 (Minn. 1948)). The

second amended complaint alleges that, in April 2017, the City towed Ash's vehicle without a warrant, consent, or "any other lawful reason for seizing the vehicle." These allegations state a plausible claim that Ash has a property interest in her vehicle and that the City deprived her of that interest without lawful justification.

Although the City argues that Ash fails to allege that the City willfully interfered with her property, ordinarily "the intent, knowledge or motive of the converter is immaterial except as affecting damages." *Meyer v. Dygert*, 156 F. Supp. 2d 1081, 1088 (D. Minn. 2001) (quoting *Larson*, 32 N.W.2d at 650). Under Minnesota law,

> [t]he intention necessary to subject to liability one who deprives another of the possession of [their] chattel is merely the intention to deal with the chattel so that such dispossession results. It is not necessary that the actor intend to commit what [the actor] knows to be a trespass or a conversion.

*Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 586 (Minn. 2003) (quoting *Restatement (Second) of Torts* § 222 cmt. c (1965)); *accord Herrmann v. Fossum*, 364 N.W.2d 501, 503 (Minn. Ct. App. 1985) (stating that an "innocent misapplication or deprivation of [property] owned by others is in the law no less a conversion because such was done innocently or in ignorance"). The City's intent to dispossess Ash of her property when it towed her vehicle—and charged her $200 to do so—can be reasonably inferred from the facts alleged in the second amended complaint. The City's contention, that Ash must allege something more to state a claim for conversion, is contrary to Minnesota law.

Accordingly, the Court denies the City's motion to dismiss Ash's common law conversion claim.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant City of Duluth's motion to dismiss, (Dkt. 70), is **GRANTED IN PART** and **DENIED IN PART** as addressed herein.

2. Plaintiffs' Title VI claim, Section 1983 claim, and Section 1981 claim against Defendant City of Duluth are **DISMISSED WITHOUT PREJUDICE**.

Dated: September 18, 2018

Wilhelmina M. Wright
United States District Judge